wo

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniela Geonkova, | No. CV-08-01907-PHX-ROS |
| Plaintiff, | **ORDER** |
| vs. | |
| Sunrise Scottsdale Senior Living, LLC, | |
| Defendant. | |

Before the Court is Defendant's Motion for Summary Judgment. (Doc. 40). For the reasons discussed, the Motion will be granted in part and denied in part.

**PROCEDURAL HISTORY**

Plaintiff filed a Complaint alleging fraud, breach of fiduciary duty, breach of the duty of loyalty, breach of the duty of care, conversion, and mail theft under 18 U.S.C. § 1708.[1] The action named Sunrise Scottsdale Senior Living, LLC, d/b/a Sunrise of Scottsdale, as Defendant. On October 1, 2009, the parties stipulated to replacing Defendant Sunrise Scottsdale Senior Living, LLC (the "LLC"), with Defendant Sunrise Senior Living Management, Inc. (the "Management company"). According to Defendant, the LLC owns the property that houses the business known as Sunrise of Scottsdale, which is a senior living

---

[1] Plaintiff stipulates to the dismissal of all claims except for the fraud claim. (Doc. 51 at 7). Defendant will be granted summary judgment on these claims.

1 facility. The Management company operates the business, employs the workers, and is the
2 proper Defendant in this action. The LLC answered the Complaint, both on its own behalf
3 and on behalf of the Management company, and the Management company is thus
4 represented by the same counsel. Pursuant to the stipulation of the parties, the Court will
5 order the LLC replaced as Defendant by the Management company, with the caption on the
6 Complaint being amended to reflect the substitution. Because Defendant's Answer and
7 Motion for Summary Judgment were filed on behalf of both the LLC and the Management
8 Company (as the proper Defendant), the substitution does not affect the Court's resolution
9 of the Motion for Summary Judgment.

## BACKGROUND

11       Plaintiff's claims are based on the following factual allegations. Sunrise of Scottsdale
12 ("Sunrise") is an assisted living facility regulated by Title 36 of the Arizona Revised Statutes.
13 Plaintiff interviewed with Sunrise for a position entitled "Assisted Living Coordinator" in
14 November 2007. This position is responsible for scheduling caregiver activities and does not
15 require a license from the Arizona Department of Health Services ("ADHS"). The position
16 titled "Assisted Living Facility Manager," however, does require an ADHS license. Assisted
17 living facilities in Arizona are required to employ a licensed Assisted Living Facility
18 Manager in good standing. Licensed Assisted Living Facility Managers make upwards of
19 $50 per hour. When Plaintiff interviewed with Sunrise she possessed an "Assisted Living
20 Facility Manager's License" in good standing, as reflected on her resume. Although Plaintiff
21 did not know it at the time, when she was interviewed Sunrise did not have employed a
22 licensed Assisted Living Facility Manager as required by law. Sunrise never discussed this
23 with Plaintiff or otherwise mentioned it needed to hire an Assisted Living Facility Manager.
24       Although Plaintiff interviewed to be a Coordinator, a position earning approximately
25 $20 per hour, Sunrise told her it could not give her that position, but instead offered her a
26 position as a "Caregiver," for which she would be paid $10 per hour. Plaintiff accepted the
27 position, and began working as a Caregiver and earning $10 per hour. Shortly after, but
28 unbeknownst to Plaintiff, Sunrise, through Caroline, Plaintiff's supervisor, falsely notified

ADHS that its Assisted Living Facility Manager was Plaintiff. In early January, 2008, Plaintiff was promoted to the position of "Coordinator," and began earning $20 per hour.

On April 9, 2008, Plaintiff discovered that Sunrise had been falsely holding her out as Sunrise's Facility Manager. When Plaintiff confronted Caroline Cline, Cline profusely apologized, hugged Plaintiff, and admitted that she had copied Plaintiff's license and given it to the ADHS surveyor. For the following week, Cline repeatedly implored Plaintiff to sign a letter authorizing Sunrise to use Plaintiff's license, but Plaintiff refused. On April 16, 2009, Cline presented Plaintiff with a "Voluntary Resignation Form." Plaintiff refused to sign it.

Plaintiff later discovered that throughout 2008, Sunrise intercepted numerous letters from ADHS addressed to Plaintiff as the purported Facility Manager. These letters were written to notify Plaintiff that the Sunrise Facility had numerous statutory and regulatory deficiencies. Because she never received these letters, Plaintiff missed administrative hearings to suspend and/or revoke her license for failing to respond to the notices of deficiencies. Shortly after Plaintiff began to appreciate the scope of Sunrise's fraudulent activity, she resigned. Plaintiff spent several months attempting to convince ADHS that she was not Sunrise's Facility Manager. Although her license was not ultimately revoked, the cited deficiencies and her failure to respond to numerous communications remain a part of her file with ADHS.

**STANDARD**

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). To enter summary judgment, the Court must examine all evidence and find no dispute concerning genuine issues of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-256 (1986). The evidence of the non-moving party is to be believed, and all reasonable inferences drawn in its favor. *See id.* "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to

1 interrogatories, and admissions on file, together with the affidavits, if any, which it believes
2 demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477
3 U.S. 317, 323 (1986) (internal citations omitted).  However, if the non-moving party bears
4 the burden of proof at trial, the moving party's summary judgment motion need only
5 highlight the absence of evidence supporting the non-moving party's claims. *See Devereaux*
6 *v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at 323-25).
7 The burden then shifts to the non-moving party who must produce evidence sustaining a
8 genuine issue of disputed material fact. *See id.*

## DISCUSSION

Defendant moves for summary judgment on Plaintiff's fraud claim on two grounds: (1) Plaintiff suffered no economic damage, and (2) Defendant did not make any false representations.[2]  These arguments will be considered in turn.

### I.     **Plaintiff's Economic Damages**

Defendant argues Plaintiff's fraud claim fails because she suffered no economic damages.  Plaintiff does not dispute that economic damages are an essential element of a fraud claim in Arizona.  Plaintiff argues she suffered several forms of economic damages. She cites her testimony that she visited the emergency room three times in the first half of May 2008 for chest pain, shortness of breath, and other symptoms of stress caused by Defendant's conduct. (Doc. 41 at ¶ 94).  She cites evidence she resigned as a result of Defendant's conduct, was temporarily out of work, and ultimately took a lower paying position until she was able to find a new position. (Doc. 41 at ¶¶ 84, 87).  Finally, Plaintiff argues she suffered pecuniary losses because Defendant held her out for several months as the Facility Manager, but did not provide her with the extra compensation that Defendant

---

[2] Defendant also argues Plaintiff cannot recover emotional distress damages for the conversion and breach of duty claims because Defendant's alleged misconduct was insufficiently outrageous and Plaintiff's emotional distress was not severe. Because Plaintiff stipulated to the dismissal of the conversion and breach of duty claims, this argument is moot.

- 4 -

1 provides to individuals who voluntarily accept that additional responsibility. Defendant does
2 not dispute Plaintiff's contention that licensed Facility Managers typically earn significantly
3 more than Plaintiff earned. Drawing all reasonable inferences in the non-movant's favor,
4 Plaintiff has provided sufficient evidence to sustain a genuine issue of fact that she suffered
5 economic damages.

6 **II.    False Representation**

7 Defendant argues the fraud claim also fails because Defendant did not make any false
8 representations. Defendant admits representing to ADHS that Plaintiff was Sunrise's Facility
9 Manager. Defendant argues this representation was accurate. Defendant implies that
10 because it told ADHS that Plaintiff was the manager, Plaintiff was, by definition, Sunrise's
11 manager. This argument manifestly fails and merits no substantive discussion. Defendant
12 has not disputed it told Plaintiff she was Sunrise's "Coordinator" and given the job
13 responsibilities of a Coordinator, not a "Facility Manager." Defendant has not disputed that
14 it never informed Plaintiff she was being held out as a "Manager," and never gave her any
15 of the managerial responsibilities over the facility that are assigned to Facility Managers
16 under Arizona law. There is, without any doubt, a genuine issue of fact whether Defendant
17 fraudulently misrepresented that Plaintiff was Sunrise's "Facility Manager." Summary
18 judgment on Plaintiff's fraud claim will be denied.

19 Accordingly,

20 **IT IS ORDERED** Defendant's Motion for Summary Judgment (Doc. 40) **IS**
21 **GRANTED IN PART AND DENIED IN PART.** Defendant is granted summary judgment
22 on all Plaintiff's claims except for the fraud claim.

23 **FURTHER ORDERED** Defendant Sunrise Scottsdale Senior Living, LLC, is
24 replaced as Defendant by Sunrise Senior Living Management, Inc.  Plaintiff shall file an
25 Amended Complaint with a caption that reflects this substitution. The Answer and Summary
26 Judgment briefing on file shall remain Defendant Sunrise Senior Living Management, Inc.'s
27 operative answer and dispositive motion.

28

1    **FURTHER ORDERED** the parties shall file the pretrial documents referenced in the
2 Court's Scheduling Order within 30 days of the date of this Order.
3    **FURTHER ORDERED** by 14 days from the date of this Order, the parties shall
4 jointly file a notice of efforts at settlement, including whether the assistance of the Court is
5 required. If mutually desired, the Court will assign a District Judge, Magistrate Judge, or
6 Special Master to conduct a settlement conference.
7    **FURTHER ORDERED** a Final Pretrial Conference will be set by separate order.
8    DATED this 20th day of September, 2010.

_____
Roslyn O. Silver
United States District Judge